## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

JOSEPH SOMMERS
HAMMERSLOUGH,

      **Plaintiff,**

v.                                                          **Case No. 16-2349**

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security,**

      **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff Joseph Sommers Hammerslough seeks review under 42 U.S.C. § 405(g) of the Social Security Administration's denial of his application for disability insurance benefits. The parties filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#12)** be **DENIED**, Defendant's Motion for Summary Judgment **(#16)** be **GRANTED**, and the decision to deny benefits be affirmed.

### I.  Background

On April 26, 2013, Plaintiff applied for a period of disability and disability insurance benefits, alleging disability beginning May 11, 2010. The Social Security Administration initially denied Plaintiff's claims on July 25, 2013, and again upon reconsideration on January 29, 2014. On March 10, 2015, Plaintiff appeared and testified at a video hearing before the Administrative Law Judge ("ALJ"). The ALJ considered evidence provided by Plaintiff's treating and consulting physicians. The ALJ also heard testimony from Bob Hammons, an impartial Vocation Expert ("VE") and Vera Hammerslough, Plaintiff's mother.

On May 21, 2015, the ALJ issued an unfavorable decision stating that Plaintiff is not disabled under section 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R.

34.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 11, 2010 (R. 21.) and that Plaintiff has the severe impairments of dermoid brain tumor, remote history of seizure-like episodes, atrial fibrillation, obstructive sleep apnea, obesity, history of superficial vein thrombosis, congenital right sided ptosis, and extraocular movement disorder. (20 CFR 404.1520(c)). (R. 22.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (R. 22.) Additionally, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following non-exertional limitations. He can never climb ladders, ropes, or scaffolds. He can climb ramps and/or stairs, balance, stoop, kneel, crouch, and/or crawl no more than occasionally. He must avoid even moderate exposure to hazards, like unprotected heights or dangerous machinery. Any work should not require good peripheral vision on the right.

(R. 23–4.) The ALJ found that Plaintiff could not perform any past relevant work but that Plaintiff could make a successful adjustment to several other jobs in the national economy based on the VE's testimony; Plaintiff's age, education, and work experience; and the RFC. (R. 33.) The Appeals Council denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision.

## II.    Standard of Review

In reviewing the ALJ's decision, this Court does not review the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the

Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III.    Analysis

Plaintiff argues that the ALJ's decision denying his request should be reversed for three reasons. First, Plaintiff contends that the ALJ's RFC assessment failed to meet the requirements of SSR 96-8p. Second, Plaintiff alleges that the ALJ erred for failing to consider Plaintiff's impairments in combination. Third, Plaintiff asserts that the ALJ was incorrect in finding that Plaintiff's alleged symptoms were inconsistent with the established record.

#### a.    RFC

First, Plaintiff contends that the ALJ's RFC assessment failed to meet the requirements of SSR 96-8p. "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). "When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered 'severe.'" *Id.* SSR 96-8p also requires that an ALJ's RFC "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Plaintiff alleges that the ALJ failed to meet these requirements by merely arriving at conclusions without providing any evidence or narrative.

In support of this argument, Plaintiff highlights the medical evidence of two state agency doctors. First, on July 18, 2013, Dr. Gotanko stated that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds, and that Plaintiff could stand, walk, or sit for up to six hours of an eight-hour-day. (R. 102–05.) Dr. Gotanko also stated that based on the documented findings, Plaintiff was not disabled. (R. 105.)

Second, on January 28, 2014, Dr. Bilinsky stated that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, and that Plaintiff could stand, walk, and sit

for six hours of an eight-hour work day. (R. 103–17.) Dr. Bilinsky also listed Plaintiff as not disabled. (R. at 117.)

Plaintiff alleges that "the ALJ rejected the State agency opinion on how long Mr. Hammerslough was able to lift and carry, and on how long Plaintiff could stand and walk, yet, without explanation, accepted their opinion on how long he could sit." The ALJ's opinion, however, includes an explanation as to why he limited Plaintiff's standing and walking beyond the state agency doctors' opinions while keeping the sitting recommendation. The ALJ stated that, "[t]he opinions of the state agency are not unreasonable given the available medical evidence at the time. Nevertheless, the undersigned has given the claimant substantial benefit of the doubt by considering additional exertional and nonexertional limitations." (R. at 32.)

The ALJ further relied on substantial medical evidence and provided a step-by-step narrative that supported his decision. The ALJ first considered medical evidence from Plaintiff's treating physicians dating back to April 2010. (R. 25.) The ALJ then reviewed the medical evidence in chronological order, highlighting Plaintiff's treatments and medical findings. (R. 25–29.) This review consisted of 33 accounts of Plaintiff's medical history. Only after reviewing the entire medical history did the ALJ conclude that the objective medical record supported a conclusion that Plaintiff was not disabled. This step-by-step analysis of the medical record is a sufficient narrative for purposes of 96-8p. *See Knox v. Astrue*, 327 Fed. App'x 652, 657 (7th Cir. 2009) ("Although the 'RFC assessment is a function-by-function assessment,' SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient.").

Plaintiff also alleges that the ALJ gave insufficient weight to Dr. Eisenburg's assessment that Plaintiff was unable to work. The ALJ is responsible for resolving conflicts in the medical evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ considers all conflicting evidence before him. *Id.* In resolving conflicting medical opinions, it is reasonable for the ALJ to give "more weight to some evidence and less to others." *Id.* Dr. Eisenburg did not provide any evidence for his conclusion that Plaintiff

was unable to work. (R. 775.) Therefore, it was reasonable for the ALJ to give more weight to the medical opinions that provided support and evidence for their findings over that of Dr. Eisenburg.

Plaintiff's assertion that no medical evidence supported the finding that Mr. Hammerslough is capable of sedentary work is rebutted by Plaintiff's own brief, which cites to state agency medical opinions that claim that Plaintiff could do far more than sedentary work. Additionally, the ALJ considered the entire medical opinion and gave Plaintiff the benefit of the doubt by limiting him to sedentary work. This approach is entirely consistent with SSR 96-8p.

### b. Combination of Impairments

Second, Plaintiff alleges that the ALJ erred in failing to consider Plaintiff's impairments in combination. The ALJ is required to consider "the *aggregate* effect of [the] entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F. 3d 912, 918 (7th Cir. 2003). Having determined that one or more of Plaintiff's impairments were severe, the ALJ needed to consider the aggregate effect of these impairments on one another. (R. 22.)

Plaintiff claims that the ALJ failed to consider Plaintiff's weight in combination with his other ailments, as well as the combination of his medical ailments of atrial fibrillation, a dermoid brain tumor, sleep apnea, seizures, and superficial vein thrombosis. Reading the ALJ's decision demonstrates that the ALJ considered the aggregate effects of Plaintiff's ailments. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as whole.").

First, the ALJ properly considered Plaintiff's weight in combination with his medical ailments. In step 3 of the evaluation, the ALJ noted that he had "fully considered obesity in the context of the overall record evidence in making [his] decision." (R. 23.) The ALJ continued, "[t]he evidence fails to establish that the additional impact of the claimant's excess weight would cause any relevant listing to be met or medically equaled." *Id.* Therefore, despite Plaintiff's allegation that the ALJ gave no weight to Plaintiff's obesity in combination with his other ailments, the record reflects otherwise.

Second, the ALJ properly considered the aggregate effects of Plaintiff's medical issues. For example, in step 4 of the evaluation, after providing a narrative of Plaintiff's medical record and impairments, the ALJ considered the aggregate of Plaintiff's impairments in relation to the medical record. (R. 29–31.) The ALJ considered the entire medical record when concluding that the Plaintiff was not disabled.

> Given the claimant's brain tumor, sleep apnea, and atrial fibrillation, and complaints of dizziness and headaches, he has been limited to sedentary jobs that do not require climbing ladders, ropes, or scaffolds or even moderate exposure to hazards. Due to his documented visual impairment, he has been limited to jobs that do not require good peripheral vison [sic] on the right. Due to his obesity, superficial venous thrombosis and allegations of leg pain, he has been limited to sedentary work, with only occasional postural functions.

(R. 31.) The ALJ reasonably determined that the medical evidence and "total effect of all [Plaintiff's] medical problems" supported the conclusion that Plaintiff was not disabled and capable of sedentary work. *Golembiewski v. Banhart*, 322 F.3d 912, 918 (7th Cir. 2003).

Additionally, Plaintiff's seizures and superficial vein thrombosis were not addressed in the ALJ's RFC determination because the record showed that both these ailments had sufficiently improved through treatment. The superficial vein thrombosis had been successfully treated through a laser procedure. (R. 23.) In fact, at an appointment in January 2015, Plaintiff stated that his pain was a zero when he was taking Levenox and was doing well. *Id.* The ALJ also noted that Plaintiff had not "provided medical records that document a diagnosis of convulsive or noncovulsive epilepsy, and [the] medical records do not confirm he has had any seizures since his alleged onset date." (R. 22.)

Therefore, the ALJ considered Plaintiff's ailments in combination and was reasonable in excluding Plaintiff's seizures and superficial vein thrombosis from his consideration of the combined effects of Plaintiff's ailments.

### c.  Symptoms Inconsistent with Record

Finally, Plaintiff asserts that the ALJ incorrectly found that Plaintiff's alleged symptoms were inconsistent with the established record. The ALJ is charged with weighing the evidence, resolving conflicts, and making independent findings of fact. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). It is not a reviewing court's place to reweigh the evidence or replace its judgment for that of the ALJ. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The court only looks to determine whether the ALJ's decision was supported by substantial evidence. *Id.*

The ALJ provided reasonable explanation as to why Plaintiff's alleged ailments were inconsistent with the record. Regarding Plaintiff's alleged headaches, dizziness, and difficulty balancing, the ALJ relied on several medical records to conclude that these ailments were unsubstantiated by the record. For example, in April 2010, Plaintiff stated that his headaches and balancing problems had resolved. (R. 420.) Even before this, Plaintiff had reported that his headaches were manageable. After complaining of headaches, nausea, and dizziness in February 2009, March 2009, and April 2009, by April and May 2010, Plaintiff stated that his headaches had stopped bothering him. (R. 348, 357, 363, 802) In 2011, Plaintiff denied having any dizziness or headaches whatsoever. (R. 845.)

Between April 2012 and January 2015, Plaintiff saw medical professionals for headaches. In April 2012, Plaintiff stated that he had suffered from migraines as a child and that he has recently started experiencing episodic headaches. (R. 484.) In September 2013, the Plaintiff met with his physician for "worsening headache[s], worsening balance, as well as episodes of confusion and possible loss of awareness." (R. 766.) In April 2014, Plaintiff stated that his headaches ranged from mild to severe and disabling, and that he was taking no more than two Percocet a week. (R. 763.) In July 2014, however, the Plaintiff stated that the pain control of his headaches was adequate. (R. 760.) In October 2014, Plaintiff again reported having headaches that woke him in the middle of the night. (R. 746.) But since October 2014, Plaintiff had only had one episode of headaches. (R. 876.)

Despite the recent evidence that Plaintiff has been experiencing headaches, this Court concludes that there was substantial evidence supporting the ALJ's finding that Plaintiff's alleged symptoms were inconsistent with the record. The ALJ pointed to

several instances in the record that demonstrated that Plaintiff's headaches and dizziness were manageable and that Plaintiff was not disabled and capable of sedentary work.

**IV.    Conclusion**

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#12)** be **DENIED**, Defendant's Motion for Summary Judgment **(#16)** be **GRANTED**, and that the decision to deny benefits be affirmed. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 5th  day of February, 2018.


s/ ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE